William J. Robinson (CA Bar No. 83729)
email: wrobinson@foley.com
Justin M. Sobaje (CA Bar No. 234165)
email: jsobaje@foley.com
Jean-Paul Ciardullo (CA Bar No. 284170)
email: jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: 213.972.4500
Facsimile: 213.486.0065

Attorneys for Defendants
**Toyo Tire & Rubber Co., Ltd.,
Toyo Tire Holdings Of Americas Inc.;
Toyo Tire U.S.A. Corp.; Nitto Tire U.S.A., Inc.;
and Toyo Tire North America
Manufacturing Inc.**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **SENTAIDA INTERNATIONAL, INC., d/b/a SENTURY TIRE AMERICAS**,<br><br>Plaintiff,<br><br>v.<br><br>**TOYO TIRE AND RUBBER CO., LTD.; TOYO TIRE HOLDINGS OF AMERICAS INC.; TOYO TIRE U.S.A. CORP.; NITTO TIRE U.S.A., INC.; AND TOYO TIRE NORTH AMERICA MANUFACTURING INC.**<br><br>Defendants. | Case No. 8:14-cv-01457-AG (ANx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS 1-3 OF FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING:**<br><br>DATE: March 2, 2015<br>TIME: 10:00 A.M.<br>PLACE: Courtroom 10D |


**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 2, 2015, at 10:00 a.m., in Courtroom 10D of the United States District Court for the Central District of California, Southern Division, Defendants Toyo Tire Holdings Of Americas Inc., Toyo Tire U.S.A. Corp., Nitto Tire U.S.A. Inc., and Toyo Tire North America Manufacturing Inc. (collectively, "Defendants") will move and hereby do move the Court, pursuant to F.R.Civ.P. 12(b)(6), to dismiss Claims 1-3 of the First Amended Complaint (Dkt. No. 42) of Plaintiff Sentaida International, Inc., d/b/a/ Sentury Tire Americas ("Sentury") for failure to state claims upon which relief can be granted.

The grounds for Toyo's Motion is that Toyo is immune to liability under Sentury's state law business tort claims in view of the *Noerr-Pennington* doctrine and Sentury's Amended Complaint states no facts that would undermine that immunity.

This Motion is made following the conference of counsel that took place on December 3, 2014.

Defendants' Motion is made on this Notice, on the accompanying Memorandum of Points and Authorities, and on such other and further evidence as may be adduced at the hearing.

Dated: January 30, 2015

**FOLEY & LARDNER LLP**

By: /s/ William J. Robinson
William J. Robinson

Attorneys for Defendants
**Toyo Tire & Rubber Co., Ltd., Toyo Tire Holdings Of Americas Inc.; Toyo Tire U.S.A. Corp.; Nitto Tire U.S.A., Inc.; and Toyo Tire North America Manufacturing Inc.**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 1

    A. The ITC Settlements............................................................................ 1

    B. Sentury's Pleadings ............................................................................. 3

III. CLAIMS 1-3 SHOULD BE DISMISSED .................................................... 4

    A. The *Noerr-Pennington* Doctrine ......................................................... 4

    B. Sentury's Claims 1-3 Fail In View Of The *Noerr-Pennington* Doctrine ....... 6

        1. *Noerr-Pennington* Applies ....................................................... 6

        2. Sentury Fails to Show That *Noerr-Pennington* Does Not Apply ......... 8

IV. CONCLUSION.............................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*California Motor Transport v. Trucking Unlimited*,
 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972) ................................................... 5

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
 944 F.2d 1525 (9th Cir. 1991) *aff'd*, 508 U.S. 49, 113 S. Ct. 1920, 123 L.
 Ed. 2d 611 (1993) ..................................................................................................... 5, 9

*Freeman v. Lasky, Haas & Cohler*,
 410 F.3d 1180 (9th Cir. 2005) ............................................................................... 4, 5, 9

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
 No. C14-0950, 2014 U.S. Dist. LEXIS 160980 (W.D. Wash. Nov. 17,
 2014) ............................................................................................................................. 6

*Lee v. Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) ........................................................................................ 1

*Liberty Lake Investments, Inc. v. Magnuson*,
 12 F.3d 155 (9th Cir. 1993) .......................................................................................... 5

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
 429 F.3d 1364 (Fed. Cir. 2005) .................................................................................. 11

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*,
 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) .......................................... 5, 8

*Se, Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*,
 744 F.3d 595 (9th Cir. 2014) ...................................................................................... 12

*Sosa v. DIRECTV, Inc.*,
 437 F.3d 923 (9th Cir. 2006) ............................................................................... 4, 5, 9

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
 546 F.3d 991 (9th Cir. 2008) ....................................................................... 4, 5, 6, 8, 9

**Statutes**

California Business & Professions Code §17200 ............................................................ 4, 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Toyo Tire & Rubber Co., Ltd., Toyo Tire Holdings of Americas Inc., Toyo Tire U.S.A. Corp., Nitto Tire U.S.A., Inc., and Toyo Tire North America Manufacturing Inc. (collectively "Toyo") hereby seek dismissal of Claims 1-3 of the First Amended Complaint (Dkt. No. 42; "FAC") of Plaintiff Sentaida International, Inc., d/b/a/ Sentury Tire Americas ("Sentury"). Claims 1-3 of the FAC allege that Toyo engaged in Tortious Interference with Contract, Tortious Interference with Prospective Business Advantage, and violations of California Business & Professions Code §17200, all on the basis that Toyo entered into several settlement agreements in a prior litigation with tire distributors requiring, *inter alia*, that those distributors not sell one of Sentury's tires: the Landsail Trailblazer CLV6 Tire (the "CLV6"). As discussed below, the settlement agreements cannot expose Toyo to liability because the *Noerr-Pennington* doctrine immunizes parties settling legitimate lawsuits from civil liability based upon such settlements.

## II. BACKGROUND

### A. The ITC Settlements

In 2013, Toyo brought an action in the International Trade Commission ("ITC") styled *In the Matter of Certain Tires and Products Containing Same*, No. 337-TA-894 (the "ITC Action") against 16 foreign tire manufacturers and distributors to exclude imports of tires that infringed Toyo's patents. The ITC Complaint was not attached to Sentury's FAC but has been previously filed in this case at Dkt. No. 29-2, and Toyo respectfully asks the Court to take judicial notice thereof.[1] The ITC's "Notice of Institution" of that proceeding is attached as Ex. 1 to the companion Declaration of

---

[1] When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

William J. Robinson and Toyo asks the Court to also take judicial notice thereof.

As reflected in the Notice, institution of an ITC proceeding is not automatic. An ITC complaint is filed that "request[s] that the Commission institute an investigation and, after the investigation, issue a limited exclusion order and cease and desist orders." *Id*. at 1. The ITC "having considered the complaint," instituted the investigation requested by Toyo. *Id*. at 2.

Eight of the respondents entered into Settlement Agreements with Toyo (discussed *infra*) and agreed not to import tires that were alleged to infringe Toyo's patents and other intellectual property. Eight of the respondents were defaulted and the ITC issued exclusion orders against them.[2]

An exemplary one of the settlement agreements ("Agreement") with a company named Omni is attached as Exhibit B to the FAC. The Agreement: (a) listed the "Asserted Patents" in the ITC action;[3] (b) recited that Omni had imported and/or sold certain tires that Toyo alleged infringed the Asserted Patents;[4] (c) provided a list of "Toyo Intellectual Property" that included U.S. Design Patent No, 675,150 ("the '150 patent")[5] as set forth on a list attached as Exhibit 3 to the Agreement (FAC Ex. B, p. 15); (d) listed other tires that Toyo believed infringed, *including the CLV6*[6] as set forth on a list attached as Exhibit 4 to the Agreement (FAC Ex. B, p. 16); (e) contained a promise by Omni that it would not import and/or sell any of the tires listed on Exhibit 4 and/or challenge the Toyo Intellectual Property listed on Exhibit 3;[7] and (f) contained a promise

---

[2] *See* the ITC's "Issuance of Limited Exclusion Order And Cease And Desist Order Against Respondents Found in Default; Termination of Investigation," which was the final ruling in the case (previously filed at Dkt. No. 29-5).

[3] Agreement, first "Whereas" clause at p. 1; FAC Ex. B.

[4] Agreement, second "Whereas" clause at p. 1; FAC Ex. B.

[5] Agreement, second "Whereas" clause at p. 2; FAC Ex. B.

[6] Agreement, second "Whereas" clause at p. 2; FAC Ex. B.

[7] Agreement ¶¶ 1.5, 1.6, 1.9; FAC Ex. B.

2

by Toyo to dismiss its claims against Omni and its customers and to file a "Motion to Terminate on the Basis of Settlement" to end the ITC case against Omni.[8]

Importantly, Omni was free to manufacture or sell any other tires. Indeed, ¶ 1.8 provided that "Nothing in this Agreement shall be construed to prevent Omni from manufacturing, importing and/or selling tires other than the Accused Tires or those other tires listed on Exhibit 4." The CLV6 was the *only* Sentury tire listed in the Agreement and the CLV6 was but one tire in Sentury's Landsail line (*see* FAC ¶¶ 25-26, wherein Sentury states that it entered the US tire market in 2008 and began selling its Landsail tires then and introduced the Landsail CLV6 in 2013 when it allegedly sold 11,000 of those tires). Accordingly, *nothing* in the Omni Agreement, which Sentury alleges is representative of the other agreements, prevented Omni from doing business with Sentury or selling any other Sentury tire. A review of the other settlement agreements attached to Sentury's Amended Compliant will reveal that they contain the same terms.

The Settlement Agreements were also freely and voluntarily entered into by the settling respondents. Indeed, the Agreements recite that "the Parties acknowledge that they have reviewed, approved, and executed this Agreement in consultation with counsel and further represent that they have read and understand this Agreement."[9]

### B. Sentury's Pleadings

Sentury filed its original complaint on September 9, 2014, asserting claims of (1) group boycott liability under the Sherman Act, (2) antitrust liability under the Cartwright Act, and (3) unfair competition, with all three claims stemming from the fact that the ITC settlement agreements prohibited the various tire manufacturers from purchasing the CLV6 tire (among sixteen identified tires made by a variety of manufacturers). Sentury also sought a declaration of non-infringement and invalidity of Toyo's Patent No.

---

[8] Agreement ¶¶ 3.4, 3.5, 3.6; FAC Ex. B.

[9] Agreement ¶ 3.12; FAC Ex. B

D675,150.

On November 14, 2014, Toyo filed a Motion to Dismiss Claims 1-3 of the original complaint on the grounds that Sentury had not stated a claim under the antitrust laws, and that Toyo's actions in entering into settlement agreements with the ITC litigants concerning the CLV6 tire were protected by the *Noerr-Pennington* doctrine. Conceding that the original complaint could not stand, Sentury opted to withdraw its pleadings and file the FAC, dropping the antitrust allegations.

Sentury's FAC still clings to tort liability, asserting (1) Tortious Interference with Contract (FAC ¶¶ 50-53), (2) Tortious Interference with Prospective Business Advantage (FAC ¶¶ 59-64), and (3) violations of California Business & Professions Code Section 17200 (FAC ¶¶ 69-70),   The basis of each of these theories is the same: *i.e.*, that Toyo is liable for including a requirement in its ITC settlement agreements that the settling tire companies not purchase the CLV6 tire (among many others). (*See* FAC ¶¶ 50, 59, 70). As shown below, however, the settlement agreement terms are protected by the *Noerr-Pennington* doctrine.

### III.    CLAIMS 1-3 SHOULD BE DISMISSED

####     A.    The *Noerr-Pennington* Doctrine

The Ninth Circuit has held that the *Noerr-Pennington* doctrine may be invoked to defeat liability for California state law business tort claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).  The *Noerr-Pennington* doctrine stems from the First Amendment right to petition the government, and immunizes from civil liability both (1) petitioning activity itself - for instance, "[a] complaint, an answer, a counterclaim" - and (2) "conduct incidental to a petition." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005).  While only those litigation activities that communicate to the court constitute petitioning activity itself,  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (citing *Freeman*, 410 F.3d at 1184), conduct incidental to a petition, including "communications between

4

private parties," may enjoy *Noerr-Pennington* protection, "so long as they are sufficiently related to petitioning activity." *Id.* at 935. The Ninth Circuit has expressly held, for example, that "[*a*] *decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability.*". *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) *aff'd*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) (emphasis added); *see also Freeman*, 410 F.3d at 1184-85 (acknowledging this rule); *Sosa*, 437 F.3d at 934-35 (same). The same conclusion flows relative to settlement agreements and subsequent business tort claims under the reasoning in *Theme Promotions*.

An entity only loses *Noerr-Pennington* immunity from liability if its conduct falls within the "sham" exception to the doctrine. The Ninth Circuit discussed the sham litigation exception to *Noerr-Pennington* in *USS-POSCO Industries v. Contra Costa County Building & Construction Trades Council*, 31 F.3d 800, 810-811 (9th Cir. 1994), reconciling the Supreme Court's opinions in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), and *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), both of which dealt with the sham litigation exception to *Noerr-Pennington*. The Ninth Circuit held that "*Professional Real Estate Investors* provides a strict two-step analysis[10] to assess whether a single action [as opposed to a series of actions] constitutes sham petitioning. This inquiry is essentially retrospective: if the suit turns out to have objective merit, the plaintiff can't proceed to inquire into subjective

---

[10] First, the suit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; second, the baseless lawsuit must conceal "'an attempt to interfere directly with the business relationships of a competitor,'" citing *Professional Real Estate Investors*, 113 S. Ct. at 1928 (quoting *Noerr*, 365 U.S. at 144). The two parts of the test operate in succession: only if the suit is found to be objectively baseless does the court proceed to examine the litigant's subjective intent. *Id.*; *Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155 (9th Cir. 1993).

5

purposes, and the action is perforce not a sham."

### B. Sentury's Claims 1-3 Fail In View Of The *Noerr-Pennington* Doctrine

#### 1. *Noerr-Pennington* Applies

Sentury's business tort claims Nos. 1-3 are barred by the *Noerr-Pennington* doctrine. The present case is similar to that heard by the Ninth Circuit in *Theme Promotions,* in which an advertising company (Theme) sued a competitor (News) for antitrust and business tort liability when News threatened to sue various customers if those customers did business with Theme. 546 F.3d at 997-998. The basis for News' threats of suit was that the customers were bound by their contracts with News to grant News a right of first refusal to handle certain kinds of projects. *Id*. Theme argued that the agreements would not have precluded those customers from hiring it, and that News' threats of litigation gave rise to antitrust liability, as well as liability for intentional interference with prospective economic advantage. *Id.* at 997-998, 1006-1008. The jury entered a verdict for Theme, but the district court granted JMOL in favor of News, and the Ninth Circuit affirmed, holding with respect to the business tort claims that:

> We agree with the district court that a suit by News to enforce its right of first refusal agreements was potentially meritorious. Because the threatened litigation was not objectively baseless, we do not analyze News' subjective motivation…As a result, we affirm the district court's conclusion that *Noerr-Pennington* bars Theme's intentional interference claims.

(*Id*. at 1008); *see also Hard 2 Find Accessories, Inc. v. Amazon.com, Inc*., No. C14-0950, 2014 U.S. Dist. LEXIS 160980, *4-6 (W.D. Wash. Nov. 17, 2014) (dismissing antitrust and business tort claims in light of the *Noerr-Pennington* doctrine where "[Plaintiff] [] failed to allege sufficient facts to show that Apple's [infringement] letter was 'objectively baseless' and that Apple's 'motive in bringing it was unlawful.'").

Just as in *Theme Promotions* and *Hard 2 Find*, Toyo's settlement agreements with

the tire distributors in this case are protected under the *Noerr-Pennington* doctrine. At the outset, the ITC case itself cannot as a matter of law be a sham. As reflected on the Notice of Institution, bringing an ITC case is a two-step process. First, a complainant files a complaint with the ITC asking the ITC to consider the complaint and institute an investigation. Second, the ITC then reviews the complaint and decides on its own whether to institute an ITC investigation, which is what formally starts the litigation process. The ITC itself then institutes the ITC proceeding via a "Notice of Institution." That Notice for Toyo's ITC case stated in relevant part as follows:

> SUMMARY: Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on August 14, 2013, under section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, on behalf of Toyo … A supplement to the complaint was filed on September 5, 2013. The complaint, as supplemented, alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain tires and products containing same by reason of infringement of …
>
> The *complainants request that the Commission institute* an investigation and, after the investigation, issue a limited exclusion order and cease and desist orders. …
>
> SCOPE OF INVESTIGATION: Having considered the complaint, the *U.S. International Trade Commission*, on September 13, 2013, *ORDERED THAT* – (1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended*, an investigation be instituted to determine* whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after

7

TOYO MOTION TO DISMISS
CASE NO. 8:14-CV-00348-AG-AN

4836-9366-0705.1

importation of certain tires and products … (emphasis added)

Thus, it is the United States itself which actually institutes an ITC action after its own review as to the merits of the complaint. That is the required statutory process and is the process that occurred relative to Toyo's ITC Action. That process immunizes the ITC Action against any notion that it is a sham or objectively baseless.[11]

Because the ITC Action was not a sham, the eight settlement agreements that resulted from it were not shams as a matter of law regardless of any nefarious purpose that Sentury wishes to ascribe to them. They were settlement agreements flowing from an investigation by the Executive Branch of United States government via the ITC. Thus, to paraphrase *Theme*, "[b]ecause the … litigation was not objectively baseless, we do not analyze [Toyo's] subjective motivation" relative to either the ITC action itself or any settlements that flowed from it.

Even if motivation were to be considered, however, there is nothing in the Settlement Agreements to indicate anything other than Toyo legitimately seeking to enforce its intellectual property rights. Indeed, the Settlement Agreements explicitly states that the CLV6 was one of the "additional tires that *[Toyo] believes infringe* other Toyo intellectual property not asserted in the ITC Action, that Toyo believes are currently being imported into the United States, or whose importation is imminent" (p. 2, second "Whereas"; emphasis added). As such the settlement agreements were not objectively baseless or the result of any sham and the inclusion of the CLV6 was completely justified.

### 2. Sentury Fails to Show That *Noerr-Pennington* Does Not Apply

Clearly recognizing the applicability of the *Noerr-Pennington* doctrine, Sentury

---

[11] The ITC Action was a single action (as opposed to a series of actions) and thus falls within the ambit of *Professional Real Estate Investors* relative to the "sham" test. As the Ninth Circuit held in *Theme Promotions,* the subjective intent of party seeking to enforce its rights is irrelevant if the action has objective merit, so Sentury's baseless speculation about Toyo's motivations does not state a claim upon which relief can be granted. 546 F.3d at 1008

8

makes conclusory allegations in its FAC to try to shoehorn Toyo's actions into the improper purpose and/or sham exceptions in ¶¶ 44 and 45. Paragraph 44 does not use the word "sham," but states that because the settlement agreements are a "refusal to deal" (which was at the heart of the antitrust allegations dropped from the original complaint via the FAC), "Toyo's conduct is not protected petitioning activity or conduct incidental to a petition that could be immunized from liability under the *Noerr-Pennington* doctrine." That argument seeks to turn the Ninth Circuit's decisions in *Sosa, Columbia Pictures* and *Freeman* on their heads. The point of those decisions is that if the petitioning activity itself is protected because it has merit (i.e., is not "objectively baseless"), then "[a] decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and *not a separate and distinct activity* which might form the basis for antitrust *liability*," *Columbia Pictures*, 944 F.2d at 1528 (emphasis added) - or business tort liability, *Theme Promotions*, 546 F.3d at 1007. Sentury's argument ignores the holding of these cases that the *immunity of the settlement agreements as a basis for liability flows from the immunity of the underlying action* itself. Sentury seeks to turn the settlement agreements into independent bases of liability, contrary to what the cases hold.

Moreover, any "refusal to deal" notion is simply ludicrous. In the original complaint, Sentry had explicitly alleged a "refusal to deal with Sentury's Landsail Trailblazer CLV6 tire" (Dkt. 1, ¶ 39). Refusals to deal in the antitrust context, of course, deal with agreements between competitors not to deal with another *company* and not refusals to deal with a particular *product*. The Ninth Circuit has upheld such contracts. *See Charley's Taxi Radio Dispatch v. SIDA of Haw.*, Inc., 810 F.2d 869, 878 (9th Cir. 1987) (exclusion of the plaintiff's taxi fleet from an association of independent taxi drivers was lawful because the association lacked market power and its exclusive franchise to provide services to an airport-outbound market was not an essential facility). The FAC similarly alleges in ¶ 43 that the effect of the alleged "refusal to deal" was to

1  "cancel any orders that they had with Sentury for the tire, or decline to place any new
2  orders for the Sentury Landsail tire." The only specific tire identified in the FAC as "the
3  Sentry Landsail tire" is the CLV6.
4        Thus, there is little doubt that the supposed "refusal to deal" is again only relative
5  to the CLV6, as opposed to Sentury itself. Importantly, and as discussed *supra*, Omni
6  and the other settling respondents were free to manufacture or sell any other tires in
7  Sentury's Landsail line under ¶ 1.8. That provision stated that "Nothing in this
8  Agreement shall be construed to prevent Omni from manufacturing, importing and/or
9  selling tires other than the Accused Tires or those other tires listed on Exhibit 4." The
10 CLV6 was the *only* Sentury tire listed in the Agreement and the CLV6 was but one tire in
11 Sentury's Landsail line (*see* FAC ¶¶ 25-26). Accordingly, Sentury's "refusal to deal"
12 allegation fails in view of the terms of the very Settlement Agreements it relies upon.
13 There is simply *nothing* in the Omni Agreement - which Sentury alleges is representative
14 of the other agreements - that prevented Omni from doing business with Sentury, or
15 selling any other Sentury tire. Thus, ¶ 44 does not provide a factual or legal basis to
16 undermine the *Noerr-Pennington* immunity.
17       In ¶ 45, Sentury mentions the "sham" issue, alleging:

> Toyo's conduct falls within the "sham" litigation exception to *Noerr-Pennington* immunity. Toyo's failure to name Sentury or include the Sentury Landsail tire as an accused product in the ITC Action or District Court Actions is a tacit admission that any suit against Sentury would have been objectively meritless. Second, upon information and belief, Toyo's ITC settlement agreements were entered into for an improper purpose: to tortiously interfere and attempt to require the ITC respondents to boycott Sentury's Landsail tire and other competitors' products.

27 These allegations also fail to undermine the *Noerr-Pennington* immunity. As to

10

the "failure to name" allegation, the fact that Toyo did not name Sentury in its complaints is of no relevance. A patent holder may pursue or not pursue any infringer at its own discretion, and, as a matter of law, declining to pursue all infringers at once is not a concession regarding the merits of any claim. *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005) ("A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed."). Moreover, as discussed *supra*, the objective merit in the ITC Action is confirmed by the fact that the investigation was instituted by the ITC after its own review.

Even more fundamentally, the only relief that is granted by the ITC is an exclusion order under Section 337 of the Tariff Act of 1930 barring *imports* of infringing tires (as opposed to damages or an injunction for domestic sales). Sentury, like most Chinese copycat companies, does not do its own importation, and instead uses third parties to bring tires into the United States. Indeed the First Amended Complaint confirms that fact in ¶ 18, which states "Sentury *imports* and sells its Landsail brand tires in the North, Central and South American markets *through a network of tire distributing companies*." Such actions are done deliberately to keep itself beyond the reach of United States district courts and the ITC.[12] Sentury kept itself beyond the reach of the ITC and thus the fact that Sentury was not named as a defendant in the ITC action has no bearing on whether Sentury's CLV6 tire that has been brought in via its "network of tire distribution

---

[12] Such conduct is, of course, nothing new. Chinese enterprises have consistently shown nothing but contempt for United States intellectual property rights. The United States International Trade Commission in May 2011 published a report entitled *China: Effects of Intellectual Property Infringement and Indigenous Innovation Policies on the U.S. Economy* which estimated that U.S. firm's losses from intellectual property infringement by Chinese companies in 2009 was $48B. A November 2011 Report from the National Intellectual Property Rights Coordination Center entitled *Intellectual Property Rights Violations: A Report on Threats to United States Interests at Home and Abroad* stated that "Offenders in China pose the greatest threat to United States interests in terms of the variety of products infringed, the types of threats posed (economic, health and safety, and national security), and the volume of infringing goods produced there." Additionally, in its *2014 Special 301 Report*, the United States Trade Representative once again placed China at the top of the Priority Watch List for intellectual property violations. These reports are available on the Internet.

companies" infringes via the domestic sales and advertising by that network.

Likewise, the alleged "improper purpose" has been dealt with *supra*. Because the ITC Action was not a sham, the eight settlement agreements that resulted from it were not shams as a matter of law regardless of any nefarious purpose that Sentury wishes to ascribe to them. Because the litigation was not objectively baseless, any Toyo subjective motivation relative to either the ITC action itself or any settlements that flowed from it is irrelevant as a matter of law. But, even if motivation were to be considered, there is nothing in the Settlement Agreements to indicate anything other than Toyo legitimately sought to enforce its intellectual property rights. Indeed, the Settlement Agreements explicitly state that the CLV6 was one of the "additional tires that *[Toyo] believes infringe* other Toyo intellectual property."

Thus, just as with the "refusal to deal" allegations in ¶ 44, the "sham" allegations in ¶ 45 are contradicted by the Settlement Agreements themselves and thus fail to provide a factual or legal basis to undermine the *Noerr-Pennington* immunity. Stated differently, because the ITC Settlement Agreements are immune from liability, Claims 1-3 of Sentury's FAC should be dismissed. That dismissal should be with prejudice because this is Sentury's second attempt at asserting business tort claims based upon the Settlement Agreements and any further attempts at pleading such claims would be futile. *Se, Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt.*, 744 F.3d 595, 600 (9th Cir. 2014).

### IV. CONCLUSION

For each and all of the foregoing reasons, the Toyo defendants respectfully submit that the Court should dismiss Claims 1-3 of the FAC with prejudice.

Dated:  January 30, 2015    **FOLEY & LARDNER LLP**

By: /s/ William J. Robinson
William J. Robinson

Attorneys for Defendants **Toyo Tire & Rubber Co., Ltd., Toyo Tire Holdings Of Americas Inc.; Toyo Tire U.S.A. Corp.; Nitto Tire U.S.A., Inc.**; and **Toyo Tire North America  Manufacturing Inc**.