JINSHU ZHANG (SBN 166981)
john.zhang@dentons.com
FELIX WOO (SBN 208107)
felix.woo@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

ROBERT F. KRAMER (SBN 181706)
robert.kramer@dentons.com
RUSSELL S. TONKOVICH (SBN 233280)
russell.tonkovich@dentons.com
BONNIE LAU (SBN 246188)
bonnie.lau@dentons.com
C. GIDEON KORRELL (SBN 284890)
gideon.korrell@dentons.com
DENTONS US LLP
1530 Page Mill Road
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

Attorneys for Plaintiff
SENTAIDA INTERNATIONAL, INC.,
d/b/a SENTURY TIRE AMERICAS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SENTAIDA INTERNATIONAL, INC., d/b/a SENTURY TIRE AMERICAS,<br><br>Plaintiff,<br><br>v.<br><br>TOYO TIRE AND RUBBER CO., LTD., TOYO TIRE HOLDINGS OF AMERICAS INC., TOYO TIRE U.S.A. CORP., NITTO TIRE U.S.A. INC., AND TOYO TIRE NORTH AMERICA MANUFACTURING INC.,<br><br>Defendants. | Case No. SA CV14-1457 AG (ANx)<br><br>**SENTURY'S OPPOSITION TO TOYO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. RELEVANT BACKGROUND............................................................................2

III. LEGAL STANDARD ..........................................................................................3

IV. ARGUMENT .......................................................................................................4

    A. The *Noerr-Pennington* Doctrine Does Not Immunize Settlement Agreements Between Private Parties, Such As Toyo's Private Settlement Agreements With The ITC Respondents.............................4

        1. Toyo's Cited Cases Do Not Support its Assertion That Settlement Agreements Between Private Parties Are Entitled to Immunity Under the *Noerr-Pennington* Doctrine. ........................................5

        2. Courts Have Consistently Rejected Toyo's Assertion That Settlement Agreements Between Private Parties Are Entitled to Immunity Under the *Noerr-Pennington* Doctrine...................7

        3. *Noerr-Pennington* Does Not Immunize Toyo's Private Settlement Agreements That Authorize Tortious Conduct Separate and Distinct From the Issues in the ITC Action................................9

    B. Even if the Doctrine Applies, Sentury Has Adequately Alleged the Sham Litigation Exception to *Noerr-Pennington* Immunity...............10

V. CONCLUSION .................................................................................................12

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Case No. SA CV14-1457 AG (ANx)    SENTURY'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*In re Androgel Antitrust Litig.*,
  2014 WL 1600331 (N.D. Ga. Apr. 21, 2014) .................................................... 8

*Andrx Pharms., Inc. v. Biovail Corp. Int'l*,
  256 F.3d 799 (D.C. Cir. 2001) .......................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 3

*Association of Los Angeles Deputy Sheriffs v. City. of Los Angeles*,
  648 F.3d 986 (9th Cir. 2011) ............................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................................... 3

*California Motor Transport Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ..................................................................................... 4, 5

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000) ........................................................... 8

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*,
  261 F. Supp. 2d 188 (E.D.N.Y. 2003) .......................................................... 8, 10

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
  944 F.2d 1525 (9th Cir. 1991) .................................................................. 5, 6, 8

*Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ............................................................................... 4, 5, 10

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) .......................................................................... 7

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .......................................................................... 3

*Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*,
  2014 U.S. Dist. LEXIS 160980 (W.D. Wash. Nov. 17, 2014) ......................... 7

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Knevelbaard Diaries v. Kraft Foods, Inc.*,
 232 F.3d 979 (9th Cir. 2000) ................................................................................. 3

*Kottle v. Northwest Kidney Ctrs.*,
 146 F.3d 1056 (9th Cir. 1998) ............................................................................. 10

*In re Nexium (Esomeprazole) Antitrust Litig.*,
 968 F. Supp. 2d 367 (D. Mass. 2013) ................................................................. 4, 8

*Noerr-Pennington. Cardtoons, L.C. v. Major League Baseball Players Assoc.*,
 208 F.3d 885 (10th Cir. 2000) ....................................................................... *passim*

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
 508 U.S. 49 (1993) ............................................................................................... 10

*Select Portfolio Servicing v. Valentino*,
 875 F. Supp. 2d 975 (N.D. Cal. 2012) ............................................................... 5, 8

*Silvas v. E*Trade Mortg. Corp.*,
 514 F.3d 1001 (9th Cir. 2008) .......................................................................... 3, 11

*Sosa v. DIRECTV, Inc.*,
 437 F.3d 923 (9th Cir. 2006) ......................................................................... 4, 6, 10

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
 546 F.3d 991 (9th Cir. 2008) ......................................................................... 4, 7, 10

*United Mine Workers of America v. Pennington*,
 381 U.S. 657 (1965) ............................................................................................... 4

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) ......................................................................................... 3

## I. INTRODUCTION

Toyo[1] cannot attempt to immunize its illegal acts of tortious interference and unfair competition under the *Noerr-Pennington* doctrine. Toyo broadly and improperly claims that, by filing an action before the International Trade Commission ("the ITC Action"),[2] it has petitioned the government for redress for all of its potential intellectual property claims — even those not at issue in the ITC, and even as to patents, claims, parties and products not included in the ITC Action. Contrary to Toyo's assertion, however, the *Noerr-Pennington* doctrine does not provide this type of unlimited immunity, and does not apply to the substance of Toyo's settlement agreements with private parties which far exceed the scope of the issues litigated in the ITC Action.

Moreover, even if the *Noerr-Pennington* doctrine had any application here, Sentury[3] has adequately pleaded facts demonstrating the "sham litigation" exception to that doctrine: that (1) Toyo's ITC Action as to Sentury is "objectively baseless" because Toyo made a considered decision not to include Sentury or its products in the ITC Action, and (2) Toyo's "subjective intent" was improper because the purpose of the ITC settlement agreements as to Sentury was to interfere directly with Sentury's business relationships and products. Those allegations are sufficient to vitiate any presumption of immunity that might have been accorded to Toyo under the *Noerr-Pennington* doctrine.

Accordingly, the *Noerr-Pennington* doctrine does not bar Sentury's Claims 1-3 for tortious interference with contract, tortious interference with prospective business advantage and violation of California unfair competition law. Toyo's motion to dismiss is meritless and should be denied.

---

[1] "Toyo" refers to Defendants Toyo Tire and Rubber Co., Ltd., Toyo Tire Holdings of Americas Inc., Toyo Tire U.S.A. Corp., Nitto Tire U.S.A. Inc., and Toyo Tire North America Manufacturing Inc., collectively.
[2] In the Matter of Certain Tires and Components Thereof, Investigation No. 337-TA-894.
[3] "Sentury" refers to Plaintiff Sentaida International, Inc., d/b/a/ Sentury Tire Americas.

Case No. SA CV14-1457 AG (ANx)    SENTURY'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

## II. RELEVANT BACKGROUND

Sentury filed the instant action on September 9, 2014. In its First Amended Complaint ("FAC"), filed on December 31, 2014, Sentury alleges causes of action for (1) tortious interference with contract, (2) tortious interference with prospective business advantage, (3) violations of the California Unfair Competition Law, (4) declaratory judgment of noninfringement of U.S. Design Patent No. D675,150 ("the '150 patent") and (5) declaratory judgment of invalidity of the '150 patent.

Sentury's claims arise out of Toyo's activities related to the ITC Action Toyo initiated against twenty-three private third parties ("the ITC Respondents") alleging infringement of several design patents (but not the '150 patent). (FAC ¶¶ 9-10.) Importantly, Sentury was not a respondent in the ITC Action, and no Sentury products were the subject of the ITC Action. (FAC ¶ 10.) There were no tortious interference or unfair competition claims at issue in the ITC Action.

Although the ITC Action did not involve Sentury, did not involve any Sentury products, did not involve any tort or unfair competition claims, and did not involve the '150 patent, Toyo in bad faith listed (without notice to Sentury) one of Sentury's tires, the Landsail Winterstar (Landsail Trailblazer CLV6) (the "Sentury Landsail tire"), as a tire that Toyo believed infringed Toyo's intellectual property not asserted in the ITC Action. (FAC ¶ 11.) Toyo conditioned settlement with the ITC Respondents on their agreement to "cease permanently and forever desist from the manufacture, sale, offer for sale, distribution, and/or importation" of the Sentury Landsail tire based on purported (but unasserted) infringement of the '150 patent by the Sentury Landsail tire. (FAC ¶¶ 9, 29-38, Exs. A-J.)

Sentury alleges that Toyo used the leverage gained as a complainant in the ITC Action to improperly expand the scope of the settlement agreements beyond the intellectual property, parties and products at issue in the ITC Action. (FAC ¶ 39.) Sentury alleges that, but for the threat of continued litigation in the

- 2 -

Case No. SA CV14-1457 AG (ANx)        SENTURY'S OPPOSITION TO MOTION TO
                                      DISMISS FIRST AMENDED COMPLAINT

ITC Action by Toyo, the ITC Respondents would not have agreed to refrain from the manufacture, sale, offer for sale, distribution, and/or importation of the Sentury Landsail tire and other competitors' tires. (FAC ¶ 40.) Further, Sentury alleges that Toyo has unlawfully interfered and continues to tortiously interfere with Sentury's existing and prospective contractual relations with Sentury's customers and prospective customers by forcing the ITC respondents not to make, import or sell Sentury's Landsail tire, by entering into unlawful and improper settlement agreements, and by intentionally, unjustifiably, maliciously and falsely stating to customers and prospective customers that Sentury's Landsail tire infringes the '150 patent allegedly owned by Toyo. (FAC ¶ 42.) Sentury also alleges that Toyo's tortious interference has caused one or more domestic tire distributors to either cancel any orders that they had with Sentury for the tire, or decline to place any new orders for the Sentury Landsail tire. (FAC ¶ 43.)

## III. LEGAL STANDARD

"[A] complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Twombly"). Instead, a complaint must only contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008); *Association of Los Angeles Deputy Sheriffs v. City. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). The defendant may not ignore or recast the plaintiff's allegations. *Knevelbaard Diaries v. Kraft Foods, Inc.*, 232 F.3d 979, 989-90 (9th Cir. 2000). "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings . . ." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

## IV. ARGUMENT

### A. The *Noerr-Pennington* Doctrine Does Not Immunize Settlement Agreements Between Private Parties, Such As Toyo's Private Settlement Agreements With The ITC Respondents.

Sentury's Claims 1 to 3 challenge Toyo's settlement agreements with the ITC Respondents, all private parties, which unfairly and improperly sought to bar the ITC Respondents from doing business with Sentury. Since neither Sentury nor any of its products was the subject of the ITC Action, the settlement agreements' prohibition on doing business with Sentury was not (and could not have been by any stretch of the imagination) the result of, or related to, petitioning the government or litigation activity by Toyo. It is therefore not immunized under *Noerr-Pennington*.

The *Noerr-Pennington* doctrine stems from three cases in which Supreme Court held that a defendant cannot be held liable under the antitrust laws for petitioning the government, or for bringing a lawsuit, to achieve an anticompetitive result. *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 136 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965); *see also California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (expanding the *Noerr-Pennington* doctrine to cover litigation activity);[4] *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 929 (9th Cir. 2006). The *Noerr-Pennington* doctrine has been expanded beyond its original antitrust context to apply to California state law business tort claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).

"Courts are largely uniform in their view that private settlement agreements entered into during the pendency of litigation . . . fall outside the ambit of *Noerr-Pennington* immunity." *In re Nexium (Esomeprazole) Antitrust Litig*., 968 F. Supp. 2d 367, 395 (D. Mass. 2013) (holding *Noerr-Pennington* does not apply to consent

---

[4] *California Motor Transport* applied the sham exception to the *Noerr-Pennington* doctrine.

- 4 -

Case No. SA CV14-1457 AG (ANx)      SENTURY'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

judgments entered or approved by court); *see also, e.g., Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 984 (N.D. Cal. 2012) (holding *Noerr-Pennington* does not apply to private settlement agreements). The *Noerr-Pennington* doctrine therefore does not apply or immunize the tortious conduct authorized by Toyo's private settlement agreements with the ITC Respondents.

Moreover, even if the *Noerr-Pennington* doctrine were applicable here, Sentury has adequately pleaded the sham litigation exception to that doctrine. Where litigation or petitioning activity is "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor," the immunity does not apply. *Noerr*, 365 U.S. at 144; *see also California Motor Transport Co.*, 404 U.S. at 512.

### 1. Toyo's Cited Cases Do Not Support its Assertion That Settlement Agreements Between Private Parties Are Entitled to Immunity Under the *Noerr-Pennington* Doctrine.

Although Toyo cites numerous cases in purported support of the application of the *Noerr-Pennington* doctrine to Sentury's claims, it fails to cite any case that actually applies *Noerr-Pennington* to actions agreed upon through settlement agreements between private parties — the actual conduct at issue in Sentury's claims. Toyo's cited cases are readily distinguishable, and none applies *Noerr-Pennington* to immunize the terms of settlement agreements between private parties — and certainly not where those terms are far removed from the subject matter of the underlying petitioning or litigation activity.

Toyo relies principally on *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993), which does not discuss the substance of settlement agreements, but rather a party's decision to reject a settlement offer during litigation. The defendant brought antitrust counterclaims predicated in part on the plaintiffs' refusal to enter into settlement negotiations with respect to the plaintiffs' copyright infringement suit,

- 5 -

and the Ninth Circuit considered whether *Noerr-Pennington* immunized the plaintiffs from antitrust liability. *Columbia Pictures*, 944 F.2d at 1528. The Ninth Circuit held that "[a] decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability." *Id*. The *Columbia Pictures* holding, however, is limited to the *decision* to accept or reject a settlement offer. It does not offer blanket immunity to the terms of settlement agreements entered into by private parties or all actions contemplated thereby — much less settlement agreements that broadly and improperly encompass parties, products, and claims *not at issue* in the underlying action. In fact, there was no settlement agreement at all in the *Columbia Pictures* case, as the purported antitrust liability was predicated on the plaintiffs' refusal to license the copyrighted works to the defendant in ongoing litigation. *See id.*

Toyo also cites a number of cases that are irrelevant here because they deal exclusively with pre-litigation threats,[5] not settlement agreements or agreements between private parties. For example, in *Sosa v. DirecTV, Inc*., 437 F.3d 923 (9th Cir. 2006), the Ninth Circuit considered whether sending over tens of thousands of pre-litigation demand letters was immunized under *Noerr-Pennington*. *Id*. at 925. The court held that sending such demand letters was "conduct incidental to the prosecution of the suit" and thus protected by *Noerr-Pennington*. *Id*. at 933-935. Notably, *Sosa* did not consider the applicability of *Noerr-Pennington* to any settlement agreements, let alone settlement agreements between private parties. In contrast, here, Sentury's claims rest on Toyo's impermissible anticompetitive activities contemplated in private settlement agreements with the ITC Respondents, not pre-suit litigation threats.

---

[5] Not all courts have found pre-litigation threats to be immunized under *Noerr-Pennington*. *Cardtoons, L.C. v. Major League Baseball Players Assoc*., 208 F.3d 885, 893 (10th Cir. 2000).

All of Toyo's other cited cases are irrelevant and unpersuasive here for the same reason — they say nothing about whether the *Noerr-Pennington* doctrine should apply to private settlement agreements. *See, e.g., Theme Promotions*, 546 F.3d at 1007 (pre-suit demand letter); *Hard 2 Find Accessories, Inc. v. Amazon.com, Inc.*, 2014 U.S. Dist. LEXIS 160980, *4 (W.D. Wash. Nov. 17, 2014) (pre-litigation infringement notice); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (discovery communications during litigation).

In short, none of Toyo's cited authorities applies *Noerr-Pennington* to settlement agreements between private parties, and certainly not to the terms of private settlement agreements that cover parties, products, claims and patents that were never at issue in the underlying litigation.

### 2. Courts Have Consistently Rejected Toyo's Assertion That Settlement Agreements Between Private Parties Are Entitled to Immunity Under the *Noerr-Pennington* Doctrine.

The only courts to directly consider whether to extend *Noerr-Pennington* immunity to private settlement agreements, including consent judgments entered or approved by a court, have uniformly rejected Toyo's arguments.

In *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, the court rejected the defendants' argument that, because settlement agreements are related to litigation, they "should receive the same protection as threatened litigation or an offer of settlement." 256 F.3d 799, 818 (D.C. Cir. 2001). The court acknowledged that "certain litigation conduct" may be protected under *Noerr-Pennington*, but found it did not extend to settlement agreements. *Id*. at 818-19 ("The Agreement is not unlike a final, private settlement agreement resolving the patent infringement litigation by substituting a market allocation agreement. Such a settlement agreement would not enjoy *Noerr-Pennington* immunity and neither does the Agreement here."). *See also In re Androgel Antitrust Litig.*, 2014 WL 1600331 at *8 (N.D. Ga. Apr. 21, 2014) ("Here, the consent decree was formed by [the parties]

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

to settle their dispute, not by the Court in order to terminate pending litigation. . . . [T]he 'source . . . of the anticompetitive restraint at issue' is the parties' reverse payment agreement itself, not the governmental action. The Defendants' private agreement should not be due *Noerr-Pennington* immunity.").

The courts in *Select Portfolio Servicing v. Valentino*, 875 F. Supp. 2d 975, 986 (N.D. Cal. 2012), and *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 635 (E.D. Mich. 2000), *aff'd*, 332 F.3d 896 (6th Cir. 2003), have similarly held that *Noerr-Pennington* does not apply to private settlement agreements. In so holding, both courts analyzed and rejected the reasoning of *Columbia Pictures*. That case merely involved "the offer and rejection of a settlement," which was far more related to petitioning activity than "enforcement of settlement terms" between private parties, which the courts deemed to be "separate and distinct" from any petitioning activity. *Select Portfolio,* 875 F. Supp. 2d at 986; *Cardizem,* 105 F. Supp. 2d at 640-41.

Accordingly, as a district court recently observed, "[c]ourts are largely uniform in their view that private settlement agreements entered into during the pendency of litigation that are neither presented to nor approved by the judge presiding over the dispute fall outside the ambit of *Noerr-Pennington* immunity." *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 395 (D. Mass. 2013). The *Nexium* court took that rule one step further, holding that consent judgments entered by a federal district court "are not eligible candidates for *Noerr-Pennington* coverage." *Id*. "The entry of a consent judgment cannot be construed as conduct that is 'incidental' to litigation" because it is "effected at the behest of private parties" and is not intended to "persua[de] a judicial officer to obtain a redress of grievances." *Id*. at 396-97. *See also In re Ciprofloxacin Hydrochloride Antitrust Litig*., 261 F. Supp. 2d 188, 212-213 (E.D.N.Y. 2003) ("Even if signing the Consent Judgment could be construed as approving the Settlement Agreements,

government action that 'amounts to little more than approval of a private proposal' is not protected.").

Thus, this Court, like all other courts to have directly considered the issue, should reject Toyo's arguments and rule that the *Noerr-Pennington* doctrine does not extend to the terms of settlement agreements between private parties.

### 3. *Noerr-Pennington* Does Not Immunize Toyo's Private Settlement Agreements That Authorize Tortious Conduct Separate and Distinct From the Issues in the ITC Action.

Toyo relies upon the ITC Action to satisfy the requirement that it "petitioned the government for redress," but the conduct Toyo seeks to immunize is entirely unrelated to the ITC Action. The ITC Action was filed without providing any notice to Sentury or otherwise affording Sentury any due process, and did not name Sentury, did not involve its products, and did not assert claims against Sentury or as to the '150 patent. (FAC ¶¶ 9-10.) Despite Sentury having nothing to do with the ITC Action, Toyo entered into eight settlement agreements with the ITC Respondents which directly and tortiously interfered with Sentury's business relationships, by prohibiting the ITC Respondents from making, selling, or importing certain tires that were not at issue in the ITC Action, such as the Sentury Landsail tire. (FAC ¶ 41, Exs. A-J.) These impermissible anticompetitive activities were agreed upon by private parties — Toyo and each ITC respondent — and involved no government petitioning activity.

Toyo cannot credibly contend that the ITC Action it initiated to seek redress for purported patent infringement claims against third parties and non-Sentury products was intended to "persuade a judicial officer to obtain a redress of grievances" related to Sentury or Sentury's products. To the extent Toyo asserts that the ITC somehow approved the ITC Action, or dismissal of the ITC Action, or Toyo's settlement agreements, mere government approval of the settlement

- 9 -

Case No. SA CV14-1457 AG (ANx)  SENTURY'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

agreements is not sufficient to bring them within the ambit of *Noerr-Pennington* immunity. *See, e.g., Ciprofloxacin Hydrochloride*, 261 F. Supp. 2d at 213.

Accordingly, Toyo's private settlement agreements seeking to boycott Sentury tires were "separate and distinct" from the issues raised in the ITC Action, and therefore "unrelated" to any of Toyo's alleged petitioning or litigation activity. The *Noerr-Pennington* doctrine therefore does not immunize the tortious conduct authorized by Toyo's private settlement agreements with the ITC Respondents, particularly where, as here, those settlement agreements encompass parties, products, claims and patents that were never at issue in the ITC Action.

### B. Even if the Doctrine Applies, Sentury Has Adequately Alleged the Sham Litigation Exception to *Noerr-Pennington* Immunity.

*Noerr-Pennington* immunity is not a shield for petitioning conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Sosa*, 437 F.3d at 938 (quoting *Noerr*, 365 U.S. at 144). Accordingly, conduct otherwise protected by the *Noerr-Pennington* doctrine may nevertheless be restricted by law if it falls within the "sham litigation" exception. *Theme Promotions*, 546 F.3d at 1007. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, the Supreme Court established a two-part test for determining whether the sham litigation exception applies — a plaintiff must plead that the defendant's lawsuit was (1) objectively baseless, and (2) concealed attempt to interfere with the plaintiff's business relationships. *See* 508 U.S. 49, 60-61 (1993); *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998).

Here, Sentury has adequately pleaded both elements of the "sham litigation" exception to *Noerr-Pennington* immunity here. First, Sentury alleges that, as far as Sentury or any of its products is concerned, Toyo's ITC Action is "objectively

- 10 -

baseless" because "Toyo's failure to name Sentury or include the Sentury Landsail tire as an accused product in the ITC Action or District Court Actions is a tacit admission that any suit against Sentury would have been objectively meritless." (FAC ¶ 45.) It is not relevant that the ITC issues a "Notice of Institution" of the ITC proceeding, since neither Sentury nor its products were at issue in the ITC Action, and therefore the ITC could not have assessed the objective merit or baselessness of any suit against Sentury. (*See* Opp. 7-8.) That the ITC Action may have merit as to the parties and products actually named and involved in the suit, does not negate the action's baselessness with regard to Sentury and its products, which were never named or even tangentially mentioned in the ITC Action. If Toyo could be immunized under *Noerr-Pennington* regardless of the actual scope of the underlying petition, then all otherwise illegal anticompetitive activities could be whitewashed with irrelevant government petitions.

Second, Sentury alleges that Toyo acted with the improper purpose of tortiously interfering with Sentury's contracts and business relationships, and attempting to require the ITC Respondents to boycott Sentury's Landsail tire. (FAC ¶ 45.) In its opposition, Toyo invites error by asking the Court to infer that Toyo's subjective motivation was innocent, contrary to the settled principle that a plaintiff's allegations must be taken as true and construed in the light most favorable to plaintiff. *See Silvas*, 514 F.3d at 1003. However, Toyo's claimed motives are belied by the plain language of Toyo's settlement agreements, which explicitly seek to interfere with Sentury's business relationships by improperly attempting to bar the manufacture, sale or import of its Sentury Landsail tire, which, to date, has never been accused of patent infringement in any judicial or administrative action. In any event, the facts regarding Toyo's subjective intent are inherently within Toyo's knowledge and control, and thus can rarely be specified in

detail before discovery, which counsels denying Toyo's motion to dismiss and allowing Sentury to take discovery to ascertain the exact nature of Toyo's motives.

Accepting as true all of the allegations, as is required at the pleadings stage, Sentury has stated a plausible basis for the "sham litigation" exception to *Noerr-Pennington* immunity to apply to Toyo's meritless attacks and attempt to boycott Sentury and its products here.

## V. CONCLUSION

The *Noerr-Pennington* doctrine does not immunize Toyo's tortious conduct because the doctrine does not apply to settlement agreements between private parties. Alternatively, Sentury has adequately pleaded the sham litigation exception to *Noerr-Pennington* immunity. Accordingly, the Court should allow Sentury's Claims 1 to 3 to proceed and should deny Toyo's motion to dismiss in its entirety.

Respectfully submitted,

Dated: February 9, 2015

DENTONS US LLP

By: /s/ Felix T. Woo
Felix T. Woo

Attorneys for Plaintiff
SENTAIDA INTERNATIONAL, INC.,
d/b/a SENTURY TIRE AMERICAS

83778478

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300